**BROWN v. DONALD et al.**

No. 14994.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 7, 1949.

Thomas & Thomas, of Big Spring, for appellant.

Donald & Donald and J. M. Donald, all of Bowie, for appellees.

SPEER, Justice.

A. D. Brown, in short and statutory form of trespass to try title, sued Paul Donald, J. M. Donald, W. T. Nichols, Jr. and Claude Orm to recover title and possession of described land in Montague County, Texas, shown by the description to be 100 acres off of the south side of a 160 acre tract, being the northwest quarter of Section 27, Jack County School Land.

The Donalds answered by general denial, not guilty, limitation and bona fide purchasers for value. They also filed a cross-action against Brown in short form of trespass to try title on a much larger tract but including the land described in Brown's petition. They alleged that Brown's suit slandered their title and prayed for recovery of title and that same be quieted in them as against Brown.

Defendant Nichols disclaimed any right, title or interest in any of the land and was dismissed from the suit under his disclaimer.

Defendant Claude Orm answered Brown's petition with a general denial, not guilty and asserted his rights to be held under an oil and gas lease dated January 21, 1948 on all of the land described by cross-plaintiffs, including that claimed by Brown, basing his claim solely upon said oil and gas lease under the Donalds who, he alleged, owned the title.

Trial was to the court without a jury, resulting in a judgment that Brown take nothing and that defendants, the Donalds, be quieted in their ownership, title and possession of the land subject to the claims of

Orm under the oil and gas lease from them.

From that judgment Brown has perfected this appeal. He will be referred to as appellant, the Donalds as appellees and Orm by name.

The record before us clearly discloses that appellant's claim was not in fact to recover the fee title to the 100 acres but is for the recovery of an undivided 1/16th interest in the minerals thereunder.

There is no material conflict in the evidence. It consists mainly of documents and stipulations. The principal difference between the parties lies in their construction and effect of the various documents introduced in evidence by the respective parties.

Appellant relies upon six points of error; they all pertain to a single complaint which in effect is that the court erred in denying him a recovery and in entering judgment for appellees.

Statements from the record are made in his brief to support appellant's contention that he had proven by a complete chain of title his right to a recovery of the fractional mineral interest in the land sued for. Referable to the testimony offered by appellant, it is only necessary for us to say it consisted of a stipulation by the parties that F. E. Hoover was the common source of title; and written instruments as follows: Hoover to Nichols, Jr., dated July 1, 1919; Nichols, Jr. to Geo. F. Simmons, dated April 27, 1922; Geo. F. Simmons to Max Simmons, dated August 8, 1928; and Max Simmons to A. D. Brown (appellant), dated June 22, 1929, each purporting to assign an undivided 1/16th mineral interest, as construed by appellant. Appellant also introduced in evidence a document in the form of a Declaration of Trust, forming what is referred to throughout the record as the "Security Royalty Syndicate" ; we shall have occasion to refer to this instrument again in this opinion.

Appellees introduced in evidence oil and gas leases, covering the land in controversy from F. E. Hoover to Heyden, dated May 6, 1929 and from Hoover to Gracey, dated May 10, 1935, and ex parte affidavits showing that each of these leases had lapsed for failure to pay annual rentals. They also introduced a general warranty deed from Rosa Lee Parish et al. (shown to be all of the heirs of F. E. Hoover and wife, both deceased) to Paul Donald and J. M. Donald, dated October 24, 1945, along with a release of the vendor's lien retained therein. Also a conveyance or assignment of the mineral rights claimed by appellant, by Geo. F. Simmons to Security Royalty Syndicate, dated August 30, 1922. Also an instrument dated March 5, 1946, signed by W. T. Nichols, Jr., purporting to convey to the appellees all of the right, title and interest in the property in controversy owned by the Security Royalty Syndicate or the said Nichols, Jr., he (Nichols), claiming in the instrument, to be the sole owner of all property standing in the name of said Syndicate.

At the request of appellant the trial court filed findings of fact and conclusions of law. Among other things, the court found, (3) that F. E. Hoover and his wife were the common source of title; (4) that F. E. Hoover and wife were dead and that certain named persons were their only surviving heirs (those named appear to be the same persons who executed the deed to appellees on October 24, 1945); (5) that the instrument from Hoover to Nichols, Jr., dated July 1, 1919 (being the first instrument relied upon by appellant in his chain of title), was only a "Royalty Contract dependent upon an outstanding Oil and Gas lease which has expired, and therefore this instrument is of no force and effect." The fifth finding continues with language to the effect that even if the instrument referred to was effective for any purpose of this suit, the court found that such title or interest taken by Nichols thereunder passed to Geo. F. Simmons, who in turn conveyed or assigned such rights as he had to Security Royalty Syndicate on August 30, 1922, before he, the same Geo. F. Simmons, attempted to convey or assign his interest to Max Simmons on August 8, 1928, and that nothing passed to Max Simmons by the last mentioned instrument, thus creating a complete break in appellant's chain of title. (6) That appellant introduced in evidence the Declaration of Trust dated October 9, 1922 and from this the court finds that

"such Security Royalty Syndicate now exists, thus destroying any title to support his claim to said lands." (7) That appellees are in possession of the lands as innocent purchasers for value and that they hold a consecutive and regular chain of title from the common source. (8) Appellant has failed to show any title to the land.

The court's conclusions of law repeat some of the fact findings and announce that appellant has shown no title, but that the appellees had shown title and were entitled to judgment for the mineral rights in controversy.

The documentary evidence undoubtedly supports the legal conclusions reached by the trial court in denying a recovery to appellant and decreeing judgment for appellees, but we cannot go along with his holding that the conveyance from Hoover to Nichols, Jr., dated July 1, 1919, was void and of no effect. A careful reading of its terms will disclose that an interest in the minerals under the land passed, whether that interest could be denominated an undivided mineral interest under the whole tract or whether it was a part of what is most commonly known as the "Royalty." The instrument did recite that the assignment of the mineral rights was subject to an outstanding oil lease, but it also provided that if that lease should be forfeited the assignee should thereafter have the same amount of mineral interest in the land but should not be entitled to future rentals if and when it should be leased again. As a matter of fact all the conveyances, assignments and transfers by whatever name they may be known, under which appellant claims contained substantially the same language as did the first one. The language of the trial court in making the finding indicates that he must have had some doubt about the correctness of his holding, and properly, we think, held even if some interest did pass to grantee in the first instrument, it afterwards passed by mesne conveyances to Geo. F. Simmons, who conveyed that interest to the Security Royalty Syndicate, and thus broke appellant's chain of title.

It is argued by appellant that although Geo. F. Simmons did convey his interest to the named syndicate, the Declaration of Trust forming the Syndicate provided that Geo. F. Simmons and a cosigner or organizer named W. I. Boyd were named as trustees therein with full power to sell and convey its assets, and that Geo. F. Simmons thereafter did sell and convey this undivided mineral interest to Max Simmons, under whom appellant claims. The Declaration of Trust, as was common about the time it was written, consisted of many pages of typewritten matters meticulously defining its purpose, manner of operation, naming trustees, giving them almost unlimited power and authority in the management, control and disposition of its property. This Declaration of Trust was not of record in Montague County where the land in controversy was located at the time appellees acquired their claimed rights, and they had no actual or constructive notice of its existence, except that the Geo. F. Simmons conveyance named it as grantee or assignee; by this instrument appellees knew the title had passed out of Simmons and they procured the instrument of conveyance from Nichols, Jr., which recited substantially that he never did organize the contemplated Security Royalty Syndicate but was the owner of all its potential properties. We are not deciding this case upon that instrument alone.

Appellant introduced the Declaration of Trust in evidence over the objections of appellees. He must place himself upon one or the other horn of the dilemma, if such it be. Apparently he chooses to rely upon the Declaration of Trust forming the Security Royalty Syndicate, to do otherwise would be to confess that his chain of title was fatally defective. It seems that he cannot afford to rely upon a contention that no such "Syndicate" ever existed and Simmons' conveyance was to a person, persons or organization not in existence, for he proved otherwise. The Declaration of Trust under which the "Syndicate" was formed names Geo. F. Simmons and W. I. Boyd as trustees of all the property standing in its name and is replete with many expressions which give the trustees as such, and no one else, the right to handle, manage and dispose of its assets. The named trustees nor either of them as such trustee ever

at any time conveyed or assigned the "Syndicate's" property involved in this suit to appellant or to any one under whom he claims.

Among other things, the Declaration of Trust recites that Geo. F. Simmons and W. I. Boyd are the trustees of Security Royalty Syndicate; that all property in the name of the Syndicate shall be held by the trustees for the use and benefit of the Syndicate; third persons may rely upon the action of the trustees and must be bound thereby; that the management and control of the trust estate is vested in the trustees, giving them the sole right to buy, sell and lease all its properties, within their discretion; "That when said trustees shall sign and properly acknowledge a conveyance to any of its property it shall have the effect to pass title," etc. It will be noted that the "trustees" are mentioned in the plural in each instance, meaning, we think, that they must act jointly. There is nothing in the record to indicate that the trustees as such ever parted with the legal or equitable title held by them for the Syndicate shown in the chain of title under which appellant claims.

The "Declaration of Trust" in this case is such as is generally known as a "Common Law" or "Massachusetts Trust." It is unnecessary for us to set out in full the nature of such an organization. There is no reason why parties may not properly form an express trust for the ownership and handling of property.

In 65 C.J. 264, sec. 46(4), the rule is announced in substance that an express trust is generally created by an instrument pointing out the property, purposes and persons of the trust and that a definite declaration of each is essential. In the same volume, at page 1101, sec. 1054(5), the general rule is announced that the purpose, property and persons should be set out with much particularity and that in such cases the trustees have only such powers as are specifically given them by the instrument. In the same volume at page 1102, sec. 1055-b, it is declared that where more than one trustee is named they must act jointly unless express authority is given to the contrary, and "Therefore action taken by the trustees separately and not as a group is inadequate to bind the trust."

Such matters are controlled by the same principles as those announced in Article 3432, Vernon's Ann.Civ.St., concerning estates being handled by co-executors under wills. In such cases co-executors must join in a conveyance of real estate and conveyance by one passes no title.

Appellant in this case did not show by the evidence before the trial court that he had acquired the title to the mineral rights sued for.

The law applicable to trespass to try title in this State is settled that the plaintiff has the burden of proof to show his right of recovery upon the strength of his own title and not upon the failure of his adversary to establish title in himself; that when plaintiff fails to discharge the burden of proof and defendant is in possession, judgment denying a recovery by plaintiff and vesting title in defendant is proper. 41 Tex.Jur. 497–499, sec. 33. Later authorities are collated and the rule was again announced by this court in Tate v. Johnson, 140 S.W.2d 288, writ dismissed, judgment correct.

It is unnecessary and we do not attempt to determine whether the evidence shows perfect fee simple title in the appellees, but suffice it to say that under the testimony and findings of fact announced by the trial court appellant was not entitled to recover and under the rule of law above announced, appellees were properly awarded title in this case, as against appellant.

Judgment of the trial court should be and it is by us affirmed.